IN THE SUPREME COURT OF THE STATE OF ARIZONA
En Banc

| | |
|---|---|
| CONNIE I. WILMOT, surviving spouse, on her own behalf and on behalf of all who may have a statutory right of recovery, | ) ) ) ) | Arizona Supreme Court No. CV-02-0130-PR |
| Plaintiff-Appellee, | ) ) ) | Court of Appeals Division One No. 1 CA-CV 01-0359 |
| DR WILLIAM T. EVANS, M.D. and DEBRA EVANS, husband and wife; EMERGENCY PHYSICIANS, INC., an Arizona corporation, | ) ) ) ) ) | Maricopa County Superior Court No. CV00-002462 |
| Defendants-Appellees, | ) ) | |
| v. | ) ) | |
| JEFFREY WILMOT, LESLIE KUMPF, MICHELLE LAZEK, TERESA BALOGH, DOUGLAS WILMOT and DIRK WILMOT, as surviving children of decedent, Milton Wilmot, | ) ) ) ) ) ) | **O P I N I O N** |
| Appellants. | ) ) | |

Appeal from the Superior Court in Maricopa County
The Honorable Donald Daughton, Judge
REVERSED AND REMANDED

Memorandum Decision of the Court of Appeals, Division One
Filed March 21, 2002
VACATED


Barry L. Entrekin                                                                        Phoenix
Attorney for Plaintiff-Appellee

Snell & Wilmer, L.L.P.                                                                 Phoenix
By:     Dora Fitzpatrick
Attorneys for Defendants-Appellees

Kevin L. Beckwith, P.C.                                                               Phoenix
By:     Kevin L. Beckwith
Attorneys for Appellants

FELDMAN, Justice

¶1          Several months after Milton Wilmot died, his surviving wife brought a wrongful death action under Arizona's Wrongful Death Act, A.R.S.§§ 12-611 to 12- 613. The wife and her attorney knew that decedent had six adult children from a previous marriage, yet they settled the case without obtaining the consent of the children.

¶2          Those children challenged the settlement, asserting that by settling without their knowledge and consent the wife breached a fiduciary duty owed to them as statutory beneficiaries. The trial judge denied their motion to set aside an order confirming the settlement, and a majority of the court of appeals affirmed. *Wilmot v. Wilmot*, No. 1 CA-CV 01-0359 (mem. dec.) (March 21, 2002). We granted review to examine the nature and extent of the statutory plaintiff's fiduciary obligations under the Arizona statutes regulating actions for wrongful death.

**FACTS**

¶3          Milton Wilmot ("Decedent") died in April 1999 while married to Connie Wilmot ("Wilmot"). In February 2000 Wilmot filed a wrongful death action under our statute, which provided in relevant part:

> A.      An action for wrongful death shall be brought by and in the name of the surviving husband or wife or personal representative of the deceased person for and on behalf of the surviving husband or wife, children or parents, or if none of these survive, on behalf of the decedent's estate.
>
> * * *
>
> C.      The amount recovered in an action for wrongful death shall be distributed to the parties provided for in subsection A in proportion to their damages, . . . .

A.R.S. § 12-612(A) and (C) (1973).[1] The action was originally brought as "Connie I. Wilmot, surviving spouse, *for and on behalf of herself.*"  (Emphasis added.)

---

[1] The statute has been amended and now includes "child, parent or guardian" as survivors or representatives who may bring a wrongful death action. A.R.S. § 12-612(A) (Supp. 2001).

¶4         Decedent had six adult children ("the children") who lived on the east coast but had been estranged from him since his divorce from their mother in 1980. Decedent did not attend any of the children's weddings, was not aware of the birth of his grandchildren, and it appears that the children were still unaware of Decedent's death a year after it occurred.

¶5         When counsel for Wilmot, Lance Entrekin, learned about the children, he had a telephone conversation with one child, and through individual certified letters mailed to each child in August 2000, he advised the children of the pending action and of their "right to participate as a plaintiff in a lawsuit." He suggested that if they wished to participate they should "immediately hire an Arizona attorney" and informed them that "failure to do so promptly could limit or foreclose your legal rights in this matter." The following month Wilmot filed an amended complaint changing the caption on the pending action to "Connie I. Wilmot, surviving spouse, *for and on behalf of all who may have a statutory right of recovery*." (Emphasis added.)

¶6         The nature and extent of later contact between counsel is disputed, but in August 2000 there was contact between Entrekin and Pennsylvania counsel for at least one of the children (Pennsylvania was the domicile of at least one of the children). By late January 2001, the children had been in touch with an Arizona lawyer, Kevin Beckwith, and he and Entrekin talked on the telephone. With Wilmot's authorization, Entrekin and defense counsel in the tort case agreed on a settlement amount on February 12, 2001. Neither Beckwith nor the children were given prior notice of the amount of the settlement or asked for their consent. Either before or after the actual settlement was reached but on the same day, Entrekin received a letter from Beckwith advising him that contingent fee agreements had been forwarded to the children for their signature. Despite receiving Beckwith's letter, Entrekin moved for confirmation of the settlement, and the tort defendants, who may or may not have known of Beckwith's letter, joined in the motion.

¶7         On March 12, 2001, following a hearing, the trial judge granted the joint motion by Wilmot and the tort defendants to confirm the settlement. Beckwith, who had not appeared in the action but was mailed a copy of the motion, was not given notice of the hearing. The following day

3

Beckwith filed the children's opposition to the motion to confirm and a motion to set aside the court ruling enforcing the settlement. Wilmot argued that the opposition was not timely filed. The trial judge denied the motion to set aside and dismissed the case *with prejudice*, thus foreclosing any claim the children may have wanted to assert. The court of appeals affirmed. *Wilmot,* mem. dec. at ¶ 23.

## DISCUSSION

¶ 8 The facts present questions about the right of a statutory plaintiff to compromise a wrongful death action, the obligations statutory plaintiff's counsel may owe to other beneficiaries, and the rights of statutory beneficiaries known to the plaintiff as well as their obligations to act. Each of the questions will be considered in turn.

¶ 9 The children contend that when there are statutory beneficiaries other than the named plaintiff, Arizona's statutory scheme imposes fiduciary duties on the plaintiff. They argue that Wilmot breached the duty owed to them when she settled the claim without their consent. In the court of appeals the children argued that the trial judge should have set aside the judgment under Rule 60 of the Arizona Rules of Civil Procedure allowing relief from a final judgment "for any other reason [than those earlier enumerated in the rule] justifying relief . . . ." Rule 60(c)(6), Ariz.R.Civ.P. The court held, however, that the settlement was properly made without procuring the children's consent because the children had never objected to settlement or indicated that they wished to participate in the action. *Wilmot*, mem. dec. at ¶¶ 17-18. Further, any failure to give the children proper notice of the hearing on the motion to confirm was harmless; "if there was error in this case, it was of no effect" because the trial judge later heard argument on the motion to set aside and determined there was no hardship or injustice to the children. *Id*. at ¶ 22.

¶ 10 We are not bound "by the trial court's conclusions of law nor by findings that combine both fact and law." *Scottsdale Princess Partnership v. Maricopa County*, 185 Ariz. 368, 372, 916 P.2d 1084, 1088 (App. 1995). Questions of law are reviewed *de novo*. *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 499, 917 P.2d 222, 228 (1996). Similarly, questions of statutory construction are issues

4

of law reviewed *de novo*. *Zamora v. Reinstein*, 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996). We first turn to the operation of the statute.

## A.    Operation of the statute

¶ 11    The text of the wrongful death statute contemplates that claims by all statutory beneficiaries be consolidated in a single action. The statute provides the action is to be brought by a designated plaintiff "*for and on behalf of* the surviving husband or wife, children or parents . . . ." A.R.S. § 12-612(A) (emphasis added). "A wrongful death action . . . is one action for damages with one plaintiff and one judgment." *Begay v. City of Tucson*, 148 Ariz. 505, 508, 715 P.2d 758, 761 (1986); *see also Nunez v. Nunez*, 25 Ariz.App. 558, 562, 545 P.2d 69, 73 (1976) ("there is 'one action' for damages occasioned by a wrongful death. There is also but one plaintiff, one of the persons designated by statute . . . .").

¶ 12    Thus, the statutory plaintiff represents all other beneficiaries who have a "legal right . . . to be compensated for *their loss* resulting from the victim's death." *Summerfield v. Superior Court*, 144 Ariz. 467, 476, 698 P.2d 712, 721 (1985) (emphasis in original); A.R.S. § 12-612(A). Following a successful action, there is "one judgment, the proceeds of which are *held by the statutory plaintiff as trustee* for the persons on whose behalf the suit was brought." *Nunez*, 25 Ariz.App. at 562, 545 P.2d at 73 (emphasis added). The statute then provides that damages will be "distributed to the parties provided for in subsection A in proportion to their damages . . . ." A.R.S. § 12-612(C).

## B.    Fiduciary duty of the statutory plaintiff

¶ 13    Although an action could be brought by a personal representative with no stake in the outcome, in most instances, as in the present case, the plaintiff is the surviving spouse or child and is also a beneficiary, thus conducting the action and receiving the proceeds as both litigant beneficiary and trustee. *Id.*; *see also In re Millman's Estate*, 101 Ariz. 54, 63, 415 P.2d 877, 886 (1966). Thus, fiduciary duties are clearly owed to the other beneficiaries, both in conducting and settling the action and making distribution of proceeds to each of the other beneificaries at the conclusion.

5

¶14        The present question concerns the extent of the fiduciary duties that arise before a judgment is obtained. The plain language of A.R.S. § 12-612(A) tells us that the named plaintiff is acting "*for and on behalf of*" all statutory beneficiaries. And, as noted, we have held that the plaintiff acts as the representative of all the statutory beneficiaries. *Summerfield*, 144 Ariz. at 476, 698 P.2d at 721. Wilmot represented herself as such by the new caption of the amended complaint, "Connie I. Wilmot, surviving spouse, for and on behalf of all who may have a statutory right of recovery."

¶15        The *Millman* case, which the children cite and Wilmot attempts to distinguish, is relevant to this discussion. In *Millman*, a woman represented that she was the decedent's legal wife and settled a wrongful death claim without bringing legal action. But when she entered into the settlement she knew the decedent had been previously married, never divorced, and that he had living children from his legal marriage. We held the settlement was not valid because there was no notice of settlement *and* the plaintiff was not the decedent's legal wife and therefore not a statutorily designated plaintiff. 101 Ariz. at 65, 415 P.2d at 888. The children rely on *Millman* for the proposition that consent of survivors is required before compromise. Wilmot attempts to distinguish the case, arguing that if there is a proper plaintiff, *Millman* requires timely notice to beneficiaries and nothing more.

¶16        Neither reading by itself is sufficient. But *Millman* does tell us that a statutory plaintiff who has a right to bring the action also has a right to settle a claim without bringing the action at all, but the plaintiff "would be acting as a statutory trustee for the other beneficiaries . . . [and] *would have to get the consent of any other surviving relatives*." *Id*. at 63, 415 P.2d at 886 (emphasis added). *Millman* also tells us that a settlement by one fraudulently presenting herself as a legal beneficiary "and without notice" to legal beneficiaries is not *res judicata* to those beneficiaries. *Id*. at 64, 415 P.2d at 887. Unlike the plaintiff in *Millman,* Wilmot was a legal claimant, representing other known legal beneficiaries, and thus needed their consent to settle. *Id*. at 63, 415 P.2d at 886. We reject Wilmot's invitation to interpret *Millman* to hold that a proper statutory plaintiff may settle a claim or action after merely notifying known or ascertainable beneficiaries that a claim is or may be pending. Such an interpretation would be contrary to the statutory plaintiff's fiduciary obligations.

6

¶17     The court of appeals has described a fiduciary relationship as "something approximating business agency, professional relationship, or family tie *impelling or inducing the trusting party to relax the care and vigilance he would ordinarily exercise*." *Taeger v. Catholic Family & Community Services*, 196 Ariz. 285, 290 ¶ 11, 995 P.2d 721, 726 ¶ 11 (App. 1999) (emphasis added, citations omitted). The common bond between the statutory plaintiff and the beneficiaries in our wrongful death statute falls within that entire description, even when, as is the case here, the family tie is between some statutory claimants and the decedent but not between the plaintiff and those statutory claimants. The fiduciary relationship was created by statute, which both conferred power to and imposed responsibility on Wilmot. Because the fiduciary relationship existed, the children as beneficiaries were not required to exercise "the care and vigilance [they] would ordinarily exercise" when in an adversarial situation. *Id*.

¶18     But Wilmot argues that neither she not Entrekin did anything to give the children reason to rely on a fiduciary relationship. Is the fiduciary duty owed even without reliance? Our wrongful death statute does not clearly articulate the duties of the statutory plaintiff when acting "for and on behalf of" other beneficiaries. However, our statutes do provide clarity on those requirements in a similar situation, that of a personal representative acting to probate an estate. There, the requirements for compromise of claims are precise:

> The terms of the compromise shall be set forth in an agreement in writing which shall be executed by all competent persons . . . having beneficial interests or having claims which will or may be affected by the compromise.

A.R.S. § 14-3952(1). Our case law reaches the same result. Very simply, when, in a representative capacity, one asserts a claim or brings an action that affects claims of others — and in the present case, could preclude them — any settlement made by the one conducting the matter for the benefit of others must be agreed to by the others. *Millman*, 101 Ariz. at 63, 415 P.2d at 886. The consequence to claimants or beneficiaries is virtually the same whether a claim or action is foreclosed by a statutory plaintiff acting for other statutory beneficiaries or by a personal representative probating an estate. Because

7

the effect on those with valid claims in both instances is essentially the same, the duties imposed on a statutory plaintiff who seeks to settle a wrongful death action are quite similar if not identical to those imposed by statute on a personal representative. While consent from other beneficiaries does not necessarily need to be a formal agreement as required by A.R.S. § 14-3952(1), the consent must be expressly given or manifested.

## C. Fiduciary duty of counsel for statutory plaintiff

¶ 19    The dissent in the court of appeals suggests that the "court should not approve a policy that allows counsel of record to cut off the interests of those persons on whose behalf he appears . . . ." *Wilmot*, mem. dec. at ¶ 24 (Barker, J., dissenting). We generally agree with that observation, and it is certainly correct given the facts in this case: Wilmot's attorney knew that other beneficiaries existed, that those beneficiaries had contacted Arizona counsel, and that they were signing retainer agreements that would enable their counsel to assert their claims.

¶ 20    We also agree with the dissent that Wilmot's counsel could not act in an adversarial capacity or, without their consent, cut off the interests of those beneficiaries. Indeed, as the dissent noted, "it is not good policy to effectively endorse [such a] procedure . . . even if the individual [children] did not expect counsel to represent him or her." *Id.* at ¶ 25 (Barker, J., dissenting). Entrekin's task in representing Wilmot in her role as representative of *all* beneficiaries was to assist her in performing her fiduciary duties, not in violating them. *See Fickett v. Superior Court*, 27 Ariz.App. 793, 558 P.2d 988 (1976) (holding that counsel for conservator had fiduciary duty to ward). Our courts have followed this principle ever since. *See, e.g.*, *Paradigm Ins. Co. v. Langerman Law Offices, P.A.*, 200 Ariz. 146, 24 P.3d 593 (2001); *Kremser v. Quarles & Brady, L.L.P.*, 201 Ariz. 413, 36 P.3d 761 (App. 2001); *Lewis v. Swenson*, 126 Ariz. 561, 617 P.2d 69 (App. 1980).

¶ 21    Adopting the children's argument would require us to hold that although the plaintiff's fiduciary duty prohibited settlement of the action without the beneficiaries' consent, the lawyer for the statutory plaintiff, who also owed a fiduciary duty to the beneficiaries, could settle without their

8

consent. We do not believe such a result is proper or possible. *Gomez v. Maricopa County*, 175 Ariz. 469, 857 P.2d 1323 (App. 1993); *see also Garn v. Garn*, 155 Ariz. 156, 161, 745 P.2d 604, 609 (1987). Just as the plaintiff must conduct the action with full disclosure to the beneficiaries and obtain consent for settlement from all, even if such consent is difficult to obtain, so too must the lawyer for the statutory plaintiff act for all known beneficiaries unless those beneficiaries have indicated they do not wish to assert a claim or participate in the action. If such indication or consent to settlement is not obtained, then the action must be taken to trial, liability adjudicated, and damages of each participating beneficiary determined, unless, of course, the defendant is willing to make separate settlement agreements with individual claimants. At the conclusion of the action, whether by settlement and release or trial and final judgment, the matter is precluded as *res judicata* to the beneficiaries who chose not to assert a claim.

### D.      Statutory beneficiaries' right to present their case

¶ 22            Simply because claims are consolidated in one action, as our statute provides, it does not follow that the interests of the various beneficiaries are identical or that damages can be determined other than by adding the sum of each beneficiary's separate damages. This was recognized in *Nunez*.

> Although there is but one plaintiff in a wrongful death action, the respective interests of the persons entitled to be compensated for the loss of the decedent are different and in some circumstances, such as here, may be conflicting.... [S]ince there is to be one trial on the issue of liability and the damages sustained by the surviving spouse and the surviving children, participation in the trial cannot be limited to one attorney.

25 Ariz.App. at 563, 545 P.2d at 74. Moreover, the individual representation of the unique interests of separate beneficiaries results in a "single judgment [that is] a *composite* of [the beneficiaries'] respective damages as determined by the trier of fact." *Id*. at 562, 545 P.2d at 73 (emphasis added). Thus, each beneficiary who chooses to assert and establish harm is to be compensated and the verdict is the sum of each claimant's damages. The judge should instruct the jury to "find the amount of damages sustained by each beneficiary." *Id*.

9

¶23          These holdings are based on the text of the wrongful death statute, which awards "such damages as [the jury] deems fair and just with reference to the injury resulting from the death to the surviving parties who may be entitled to recover . . . ." A.R.S. § 12-613. That determination is possible only after examination of each claim, a right denied the children in this case. *Nunez*, 25 Ariz.App. at 563, 545 P.2d at 74.

**E.     Children's failure to act in a timely manner**

¶24          The court of appeals concluded that the children had not been prompt in their efforts to participate in the wrongful death action and to appear by counsel in that action. *Wilmot*, mem. dec. at ¶¶ 17-18. Thus, given the factual record, the court could not "say that the trial court erred in granting Mrs. Wilmot's motion for confirmation of settlement." *Id*. at ¶ 18. We disagree and conclude that the trial judge did err in his May 17, 2001 order granting Wilmot's motion to confirm the settlement and denying the children's motion to set aside the settlement. We agree that the children and their attorneys did not act with expedition. It was four or five months after receiving Entrekin's letter before the children contacted Arizona counsel, but some of the delay may be excusable. The record of communication between the parties is reminiscent of ships passing in the night, with one, and probably both, failing to give appropriate signals to the other.

¶25          On August 3, 2000, Entrekin wrote the children to tell them he represented Wilmot and informed them they were statutory beneficiaries with a right to representation. He told them that if they did not contact him by August 25, he would assume they were not participating. The children, who reside in New Jersey, New York, and Pennsylvania, discussed the letter. At least one of the children contacted a Pennsylvania attorney, Pasquarelli, who was told some of the children wished to participate.

¶26          On August 15, 2000, Pasquarelli contacted Entrekin by telephone. On August 31, Pasquarelli wrote to Entrekin, advising that at least two of the children wished to participate and requesting that Entrekin advise Pasquarelli of any further action that might affect the children's rights. Entrekin's affidavit claims he never received the letter because it was not properly addressed with the suite number

in his office building and was therefore probably returned to sender. Pasquarelli's affidavit, on the other hand, avows that the letter was never returned to him. We assume Entrekin never received the letter but also assume the children had reason to believe they would be kept informed. Thus, the children evidently took their time and did not contact an Arizona lawyer until January 26, 2001, when they spoke with Beckwith.

¶27            Beckwith spoke with Entrekin on January 30, 2001 and was advised, he says, that Entrekin had just returned from a settlement conference, that negotiations were nearly complete, but that the case had not settled.[2] Entrekin specifically requested that Beckwith not inform defense counsel of his contact with the children so that the defense would not be aware of any hostility between Wilmot and the surviving children prior to further proceedings. On February 8 Beckwith wrote to Entrekin to indicate the children's continuing interest and to say that he had sent fee agreements to the children and would contact Entrekin again when they were signed and returned.

---

[2] In his supplemental brief Entrekin gives a version of the conversation that is much more favorable to Wilmot. But that version is supported only by a citation to one of Entrekin's own briefs in the court of appeals. That brief gives the same version in part, but it does not find support in the record, except for Entrekin's letter "memorializing the conversation" and dated the following day. The brief says that Entrekin told Beckwith the case was "about to settle *with payments to* [*Wilmot*] *only*. Beckwith acted as if he had no intent to participate or to appear in the lawsuit on behalf [of the children whose] focus was on the probate claims." (Emphasis added.) But Entrekin's letter, to which he cites in support of this argument, characterizes this conversation much differently. The letter, in its entirety, reads:

> This will confirm our conversation of yesterday, wherein you indicated that you represent Leslie Kumpf and her five siblings and that they are inquiring about the wrongful death suit and about some estate issues. As I noted yesterday, the discovery in the wrongful death suit is complete and we are in *settlement negotiations, two months out from trial*. With regard to the estate issues, I did not handle that and my understanding is that the estate is settled. As soon as possible, please let me know what your client's (sic) plans are, so that we can plan accordingly.

Plaintiff's Motion for Confirmation of Settlement and for Sanctions, Feb 23, 2001, Exh. 3 (emphasis added). A statement in the letter that they were in "settlement negotiations, two months out from trial" is quite different from the statement in the brief that the action "was about to settle" and that Wilmot was receiving the entire proceeds.

¶28          Without further notice to Beckwith or the children, the case was settled by agreement between Entrekin and defense counsel on February 12, the very day Entrekin received Beckwith's letter of four days earlier. Entrekin's receipt of that letter was effective notice of their interest and intent to participate and, if received before the settlement conference, should have served to delay the settlement in order to obtain their consent to compromise. If, however, the letter was received after the compromise was made, it should have delayed Entrekin's motion to confirm until and unless consent was obtained. However, it did neither, and when Beckwith found out about the settlement he demanded that his clients receive a share.

¶29          Between February 20 and February 23, Beckwith faxed at least two letters to Entrekin and apparently tried to call his office, but he received no reply. On February 23, Beckwith wrote a letter to defense counsel to inform them of the children's position, the same day that Entrekin filed a motion for confirmation of settlement, a copy of which he sent to Beckwith. The motion was heard on March 12, but no notice of the hearing was given to Beckwith or the children. Nevertheless, the trial judge considered and granted the motion.[3]

¶30          The next day, when Beckwith learned the motion to confirm had been granted, he immediately filed a notice of appearance and a motion to set aside the order confirming settlement. He also filed a response to the motion to confirm and a demand that a percentage of the damages be apportioned to the children.[4]

¶31          Given all this — and more — in the record, it is possible to reach different conclusions with regard to the children's diligence. *If* this had been an adversarial proceeding between Wilmot and the children, one might accept either side of the argument whether the children had acted diligently

---

[3]  It appears that the time for the children to respond to the motion to confirm may not have expired on March 12, when the motion was heard and granted without notice to them.

[4]At that time, and so far as we know now, neither Beckwith nor the children had been advised of the settlement amount. Entrekin and defense counsel both aver that this lack of disclosure is attributable to the policy of the latter's law firm. We note what should have been obvious to all: a law firm's so-called policy cannot justify failing or refusing to inform the beneficiary of an action of the amount for which the case has purportedly been settled.

and that their claims might therefore be prejudiced by their lack of diligence. But as the undisputed facts show, there were indications throughout that the children wished to assert their claims and were proceeding, albeit slowly, to appear through independent counsel. As we have noted, our wrongful death statute does not permit Wilmot and her lawyer to act in an adversarial manner so as to preclude the claims of the children: It was their obligation, rather, to maintain the action for the benefit of all statutory beneficiaries.

¶ 32        As a practical matter, the children's claims might have left less settlement money for Wilmot if, as was quite possible and is generally the case, the defendants had offered a lump sum settlement. Entrekin may have been correct in his opinion that the children would not be able to demonstrate a compensable loss.[5] But certainly, given the January contact with Beckwith before settlement and the letter from Beckwith on the day of settlement, Wilmot and Entrekin had an obligation to inform the children of the status of the case, of the settlement offers, and of their recommendation as to acceptance. It was also their fiduciary obligation to obtain the children's consent to the settlement before any binding acceptance. In either case, it was Entrekin's obligation to assist Wilmot in performing her fiduciary duties. *Fickett*, 27 Ariz.App. at 795, 558 P.2d at 990.

### CONCLUSION

¶ 33        It was not within Wilmot's power to take action, without consent, to terminate and dismiss with prejudice the interests of the children, on whose behalf she was maintaining the action; thus, we agree with the dissent that counsel of record also lacked that power. *Wilmot*, mem. dec. at ¶¶ 25 (Barker, J., dissenting). Nor do we believe that Wilmot and Entrekin acted properly in appearing in court with defense counsel and obtaining an order confirming the settlement without first giving the children, through their Arizona lawyer, notice of the hearing on the motion to confirm. Thus, if the trial judge

---

[5] The children present an explanation for their lack of contact with their father. There is no need to extend this opinion to those allegations. Nonetheless, the sometimes opposing interests of different beneficiaries explains again why all beneficiaries are entitled to representation and to present their case. *Nunez*, 25 Ariz.App. at 563, 545 P.2d at 74.

13

was informed of all these facts, he erred as a matter of law in confirming the settlement and dismissing all claims with prejudice. If he was not so informed — and there are indications that such is the case — he erred after learning these facts in later denying the motion to set aside the order of confirmation.

¶34 We hold that our wrongful death statute imposes fiduciary duties on a statutory plaintiff acting, as he or she must, on behalf of all statutory beneficiaries. We cannot attempt to draw a bright line applicable to the myriad factual situations that may and do present themselves. Suffice it to say that a fiduciary duty of care requires that the statutory plaintiff and her lawyer act to protect the rights and interests of all beneficiaries who seek or may seek to assert their claims. Because the proper method of calculating damages for wrongful death is to compute the sum of the damages sustained by each beneficiary, the orders confirming the settlement, dismissing the case with prejudice, and denying the motion to set aside the settlement that had been reached without consent of the children must be vacated.

¶35 Therefore, the court of appeals' decision is vacated, the orders confirming settlement and denying the motion to set aside are also vacated, and the case is remanded to the superior court for further action consistent with this opinion.

_____
STANLEY G. FELDMAN, Justice

CONCURRING:

_____
CHARLES E. JONES, Chief Justice

_____
RUTH V. McGREGOR, Vice Chief Justice

_____
REBECCA WHITE BERCH, Justice

_____
MICHAEL D. RYAN, Justice