23 P.3d 108

**In the Matter of the ESTATE OF Juanita M. WARD, Deceased.**

**Northern Trust Bank of Arizona, N.A., Appellant,**

v.

**Johnny Michael Goodman and Jamie Rene Goodman, Co–Personal Representatives, Appellees.**

**No. 1 CA–CV 00–0403.**

Court of Appeals of Arizona, Division 1, Department T.

May 29, 2001.

**114**

Santin, Poli, Ball & Sims, P.L.C. by Roger D. Curley, Sondri Allison, K. Scott Reynolds, Phoenix, Attorneys for Appellant.

Thomas J. Shumard, Phoenix, Attorney for Appellees.

## OPINION

GERBER, Judge.

¶1 Northern Trust Bank of Arizona ("Trustee"), trustee under a pour-over trust created by decedent Juanita M. Ward in 1986, appeals from a final probate court order that (1) removed it as personal representative of Ward's estate, (2) approved a "Family Settlement Agreement" executed by Ward's children and grandchildren after her death, (3) removed her will from informal probate, and (4) directed that her assets "shall pass by intestacy" to appellees, her adult children. The dispositive issue on appeal is whether the Family Settlement Agreement constituted a valid "compromise" of a "good faith contest or controversy" under Arizona Revised Statutes Annotated ("A.R.S.") sections 14–3951 and 14–3952 (1995). We find that it does not and accordingly reverse, principally because the heirs' Family Settlement Agreement eviscerates the essence of the law of wills and trusts.

### FACTS AND RELEVANT PROCEDURE

¶2 On May 16, 1986, Ward executed a will and trust agreement with Northern Trust as Trustee. When she died in July 1999, she was survived by an adult son, an adult daughter, her son's two adult children, a brother and his descendants. Her will left her tangible personal property to her children to be divided by agreement. She left the residue of her probate estate to the Trustee of the Juanita M. Ward Trust.

¶3 Under the trust, each of Ward's children was to receive a minimum of one-third of the net income from the corpus until age 50 and could also withdraw up to $50,000 at any time after her death. After attaining age 50, each could withdraw additional sums that, when added to previous withdrawals, totalled no more than one-third of the corpus.

The trust contained a "spendthrift" provision expressly protecting all beneficiaries' interests in income and principal from voluntary or involuntary alienation or encumbrance.

¶ 4 The trust would terminate on a date generally determined by the longevity of Ward's children and grandchildren under age 30 or by exhaustion of the corpus. After termination any remaining principal would be divided and placed into separate trusts for the benefit of the grandchildren and their issue. Remaining interests would be distributed to those who would have been her heirs if she had died intestate.

¶ 5 After Ward's death, her will was admitted to informal probate. The Trustee was appointed as her personal representative without objection. Thereafter Ward's adult children and sole heirs filed a formal petition requesting their own appointment as Ward's co-personal representatives in lieu of the Trustee. Their petition alleged in pertinent part:

8. Petitioners believe that the Will, dated May 16, 1986, was validly executed and is decedent's last Will and after the exercise of reasonable diligence, Petitioners are unaware of any instrument revoking the Will. Petitioners intend to file with the court a family settlement agreement agreeing not to admit this Will to probate and allowing the estate to pass by intestacy.

The petition asked the court to revoke the informal probate of Ward's will and allow all her assets to pass by intestacy.

¶ 6 The Trustee filed an objection to this petition. The probate court set the matter for a contested evidentiary hearing at which Ward's heirs alleged, contrary to their earlier petition quoted above, that they now "believed" the will and trust did not express Ward's true intent and that she died before she could revise her estate plan. The memorandum also stated that the heirs disagreed with the Trustee's administration of the estate.

¶ 7 On the date set for the evidentiary hearing, Ward's heirs proffered a signed "Family Settlement Agreement" that recited that they, as "beneficiaries and remainder beneficiaries" of her will and trust, disagreed with the Trustee on the administration of the estate; that the decedent's "Estate Plan" did not express her true intentions at the date of her death; that they wished to exclude her will from probate, remove the Trustee, and alter their distributions under A.R.S. sections 14–3912 and 14–3951; and that "[t]he beneficiaries and the remainder beneficiaries desire that the beneficiaries receive complete distribution of estate assets...."

¶ 8 After post-hearing memoranda and oral argument,[1] the probate court determined that A.R.S. sections 14–3951 and 14–3952 applied and that Ward's heirs were competent to enter into such a settlement agreement under section 14–3951. The court further stated:

[T]here is in fact a controversy. This controversy concerns whether or not the family agreement by way of compromise can be considered in this type of case.

Also, there is a controversy as to whether or not the petition for formal appointment of personal representative and finding intestacy should be granted.

The probate court vacated the Trustee's appointment as personal representative and appointed in its stead not a new trustee but Ward's heirs. It entered a formal order granting the heirs' petition in toto, approving the Family Settlement Agreement, and, later, denying the Trustee's motion for new trial. The Trustee's timely amended notice of appeal confers appellate jurisdiction on this court under A.R.S. section 12–2101(F)(1) and (J) (1994).

## DISCUSSION

■ ¶ 9 We review questions of law and mixed questions of law and fact *de novo*. *Tovrea Land & Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 114, 412 P.2d 47, 52 (1966); *In re United States Currency in the Amount of $26,980.00*, 193 Ariz. 427, 429, ¶ 5, 973 P.2d 1184, 1186 (App.1998).

---

1. Neither party has provided this court any transcript of any proceeding before the probate court.

¶ 10 Arizona Revised Statutes Annotated section 14–3101(A) (1995) provides in part:

The power of a person to leave property by will, and the rights of creditors, devisees and heirs to his property are subject to the restrictions and limitations contained in this title to facilitate the prompt settlement of estates. *Upon the death of a person, his separate property and his share of community property devolves to the persons*[2] *to whom the property is devised by his last will,* or to those indicated as substitutes for them in cases involving lapse, renunciation or other circumstances affecting the devolution of testate estates.... The devolution of separate property and decedent's share of community property is subject ... to administration as provided in this title.

(Emphasis added.)

¶ 11  The heirs and the Juanita M. Ward Trust were the devisees under Ward's will.[3] Her property therefore devolved to them in accordance with the will except as restricted or limited by applicable provisions of Title 14, notably A.R.S. section 14–3101(A).

¶ 12  As authority to vary the presumptive devolution under Ward's will, the heirs rely on A.R.S. sections 14–3951[4] and 14–3952.[5]  A.R.S. section 14–3951 provides that a "compromise" of a probate "controversy" binds all the parties thereto "if approved in a formal proceeding in the court for that purpose...." Section 14–3952 authorizes the probate court to approve a compromise under section 14–3951 only if, among other things, it finds that "the contest or controversy is in good faith...." The Official Comment to Uniform Probate Code section 3–1102, 8 U.L.A. 349 (10th ed.1991), from which A.R.S. section 14–3952 was adopted, states:

The only reason for approving a scheme of devolution which differs from that framed by the testator or the statutes governing intestacy is to prevent dissipation of the estate in wasteful litigation.... *A controversy which the court may find to be in good faith,* as well as concurrence of all beneficially interested and competent persons and parent-representatives pro-

---

**2.**  A.R.S. section 14–1201(37) defines "person" as a "person or organization." A trustee of a pour-over trust is therefore a "person" within A.R.S. section 14–3101(A).

**3.**  A.R.S. section 14–1201(13) provides: "[I]n the case of a devise to an existing trust or trustee ... the trust or trustee is the devisee and the beneficiaries are not devisees."

**4.**  Section 14–3951 provides:

A compromise of any controversy as to admission to probate of any instrument offered for formal probate as the will of a decedent, the construction, validity or effect of any probated will, the rights or interests in the estate of the decedent, of any successor, or the administration of the estate, if approved in a formal proceeding in the court for that purpose, is binding on all the parties thereto including those unborn, unascertained or who could not be located. An approved compromise is binding even though it may affect a trust or an inalienable interest. A compromise does not impair the rights of creditors or of taxing authorities who are not parties to it.

**5.**  Section 14–3952 provides:

The procedure for securing court approval of a compromise is as follows:

1.  The terms of the compromise shall be set forth in an agreement in writing which shall be executed by all competent persons and parents acting for any minor child having beneficial interests or having claims which will or may be affected by the compromise. Execution is not required by any person whose identity cannot be ascertained or whose whereabouts is unknown and cannot reasonably be ascertained.

2.  Any interested person, including the personal representative or a trustee, then may submit the agreement to the court for its approval and for execution by the personal representative, the trustee of every affected testamentary trust and other fiduciaries and representatives.

3.  After notice to all interested persons or their representatives, including the personal representative of the estate and all affected trustees of trusts, the court, *if it finds that the contest or controversy is in good faith and that the effect of the agreement upon the interests of persons represented by fiduciaries or other representatives is just and reasonable,* shall make an order approving the agreement and directing all fiduciaries under its supervision to execute the agreement. Minor children represented only by their parents may be bound only if their parents join with other competent persons in execution of the compromise. Upon the making of the order and the execution of the agreement, all further disposition of the estate is in accordance with the terms of the agreement.

(Emphasis added.)

vide prerequisites which *should prevent the procedure from being abused.*

(Emphasis added.)

¶ 13  This case presents a textbook example of abuse of the estate plan procedure described in A.R.S. sections 14–3951 and 14–3952. The heirs' initial petition, quoted in ¶ 5 above, affirmatively admitted that Ward's will was validly executed, and was indeed her last will, and that they were unaware of any instrument revoking it. Despite these admissions, which they later contradicted, the heirs sought to have the probate court override her will so that her assets would pass to them free of the limitations and delays entailed by Ward's planned pour-over to the trust.

¶ 14  The heirs neither challenged Ward's testamentary capacity nor asserted that her will revealed fraud or undue influence. *See* A.R.S. § 14–2501; *In re Estate of Killen,* 188 Ariz. 562, 565, 937 P.2d 1368, 1371 (App. 1996); *Evans v. Liston,* 116 Ariz. 218, 219, 568 P.2d 1116, 1117 (App.1977). Nor did they allege that the will failed to meet any of the required statutory formalities. *See* A.R.S. §§ 14–2502, 14–2503, 14–2505, 14–2511, 14–2512, 14–2513. They contended only (1) that they disagreed with the Trustee's administration of the estate, and (2) that they "believed" that the will and trust did not express Ward's true intent and that she died before she could revise her estate plan. No evidence then or now supports either contention.

¶ 15  The heirs have cited no authority [6] for the claim that a defect or irregularity in the administration of a testate estate retroactively invalidates the decedent's will or disqualifies it from probate. We are aware of no such authority. The heirs cannot dispose of Ward's will and trust, the sole expression of her testamentary intent, simply because they dislike the Trustee's administration.[7] The remedy for bona fide problems with the trustee is not rewriting a will or trust but replacing the trustee with a new trustee, a remedy the heirs have not pursued.

¶ 16  Moreover, a testator's alleged change of mind concerning the content of her will, even if proved, is immaterial to the will's validity. As the heirs initially acknowledged, a duly executed will remains effective unless the testator takes the steps required by statute to revoke it in whole or part. A.R.S. § 14–2507. *See, e.g., In re Estate of Feir,* 145 Ariz. 295, 297, 701 P.2d 3, 5 (App.1985) (testator's letter to attorney/will custodian announcing that he was "voiding" his will under section 14–2507). Neither in the trial court nor in this court have the heirs urged a single recognized ground for invalidating the decedent's will or trust or excluding the will from probate.

¶ 17  The heirs urge the existence of a "controversy." The one that does exist now is entirely of their own making, namely, whether the heirs' Family Settlement Agreement qualified as a "compromise" under sections 14–3951 and 14–3952. A controversy born only of their impatience with the will's provisions does not approach the good faith envisioned by A.R.S. section 14–3952(3). The Family Settlement Agreement, the real purpose of which was only to avoid probate and Ward's careful distribution plan, settles no "good faith" "contest or controversy" under A.R.S. sections 14–3951 and 14–3952(3). *Cf. In re Estate of Marsh,* 247 Neb. 17, 524 N.W.2d 571, 574 (1994) (Nebraska analogue to A.R.S. sections 14–3951 and 14–3952 permits "competent parties having beneficial interests in an estate pursuant to a will clouded by a good faith contest or controversy to reach a settlement agreement that will be approved by the court if it finds that the

---

6. Ward's heirs cite A.R.S. section 14–3912 to support the proposition that beneficiaries can disregard a decedent's intent. The section does not apply here because the Trustee did not sign the agreement as required. We agree, further, with the Trustee that this section only codifies the principle that when all beneficiaries have complete and unfettered control over the residue of the estate, they may redistribute those assets. Such is not the context here.

7. It is ironic that the heirs fault the Trustee for expending attorneys' fees when they themselves began this dispute lacking good faith. The Trustee could have easily capitulated to the heirs' settlement agreement. Doing so would have sacrificed Ward's testamentary intent and breached the Trustee's fiduciary responsibility to her, although in such a way as likely to escape complaint from anyone living.

controversy is in good faith and that the agreement is just and reasonable"); *Fleisch v. First American Bank,* 305 Ill.App.3d 105, 238 Ill.Dec. 179, 710 N.E.2d 1281, 1283–84 (1999) (family settlement agreement to accelerate distribution of spendthrift trust corpus was properly rejected absent reasonable or substantial basis for finding good faith family dispute that would likely generate prolonged or expensive litigation).

¶ 18   As the Trustee aptly notes, the probate court's ruling entails the circuitous proposition that "any attempt to question whether a good faith controversy existed would then create a good faith controversy." The heirs' bootstrapping "settlement" renders the "good faith contest or controversy" requirement of A.R.S. section 14–3952(3) meaningless.   Although the probate court may settle a true good faith controversy, it cannot find a good faith controversy simply when the beneficiaries manufacture one by complaining about the distribution of a valid will or trust.

¶ 19   This Family Settlement Agreement bypassed the fundamental statutory law of wills and frustrated Ward's intended disposition of her property after death silenced her ability to protest.   In enacting sections 14–3951 and 14–3952, the legislature did not intend to override a decedent's testamentary intent expressed in a valid will not "clouded by a good-faith contest or controversy."   *In re Estate of Marsh,* 524 N.W.2d at 574.   The heirs cannot rewrite the testator's will and trust to their pleasure simply because they do not like its contents or the timing of its distributions, nor can they create a good faith controversy on that basis alone.   Their Family Settlement Agreement remains categorically ineligible as a settlement under A.R.S. sections 14–3951 and 14–3952.

¶ 20   Because of this holding, we need not consider the other issues raised.   The probate court order on appeal is reversed, and the case is remanded for further probate proceedings consistent with this opinion.

CONCURRING: SHELDON H. WEISBERG, Presiding Judge, MICHAEL D. RYAN, Judge.