In re the **ESTATE OF John J. SULLIVAN a/k/a John Joseph Sullivan, Deceased.**

No. A06–171.

Court of Appeals of Minnesota.

Dec. 5, 2006.

retroactive. We view the regulation as a correct description of the effect of MPF's election when made in 1999.

Nancy A. Sullivan, Barrington, NH, *pro se* appellant.

Michael J. Dolan and Thomas J. Reif, Thornton, Hegg, Reif, Dolan & Bowen, Alexandria, for respondents J. Polski and Carol Sullivan.

John Minge, Peloquin & Minge, P.A., Perham, for respondents Timothy J. Sullivan, Michael J. Sullivan and Patricia R. Sullivan.

Brett D. Sullivan, Prineville, OR, *pro se* respondent.

Dawn J. Sullivan, Luck, WI, *pro se* respondent.

Joanna L. Sullivan, Kilkenny, *pro se* respondent.

Kelly A. Sullivan, Richville, *pro se* respondent.

Considered and decided by ROSS, Presiding Judge; WILLIS, Judge, and DIETZEN, Judge.

## OPINION

ROSS, Judge.

This appeal arises from a dispute over the probate of John Sullivan's will and a later settlement agreement to which the estate and all children except daughter Nancy Sullivan consented. Following the death of John Sullivan, the district court entered judgment approving a settlement of a will contest and denying Nancy Sullivan's request for a statutory family allowance. Nancy Sullivan, a beneficiary of a testamentary trust created in the will, argues that the district court erred because she did not consent to the settlement agreement and because she depended on her father for support. Because Minnesota Statutes section 524.3–1102 requires the signature of all persons who have a beneficial interest or a claim that may be affected by an agreement settling a will contest and Nancy Sullivan did not join the agreement, we reverse the district court's order approving the settlement agreement. But because the record does not support her claim that she was dependent on John Sullivan as required by Minnesota Statutes section 524.4–404, we affirm the district court's denial of a statutory family allowance.

## FACTS

John Sullivan died in February 2004. He was survived by his wife, Carol Sullivan; his daughter, Nancy Sullivan; and seven other children. John Sullivan executed his final will in July 2001. The will created two testamentary trusts. The first trust, the John J. Sullivan Trust, was for the benefit of Carol Sullivan. The will directed his personal representative to fund this trust with estate assets that have "a value which when added to the value of all other interests in property that pass or have passed to [Carol Sullivan] in a manner qualifying for the marital deduction under the Internal Revenue Code, will equal the maximum marital deduction allowable in [the] estate." The will created a second trust, the John J. Sullivan Residuary Trust, with the remainder of the estate. The will authorized the trustee to use the trust funds to pay income from the residuary trust to Carol Sullivan during her lifetime, and also authorized the trustee to pay to, or apply for the benefit of, any of John Sullivan's children an amount that the trustee, in his sole discretion, deemed "necessary or advisable, to provide for [a child's] proper care, support, maintenance, health[,] education, general welfare, [or] reasonable luxuries." The will specified that distribution to the children need not be equal. John Sullivan designated John Polski as the trustee of both trusts.

In July 2003, John Sullivan executed a codicil to his July 2001 will. The codicil revoked the article of his will establishing the John J. Sullivan Trust, and replaced it with one paragraph that reestablished the trust but clarified that the amount allocated to it should be reduced by the amount necessary to increase his taxable estate to the largest amount that would not result in federal or state estate taxes. The codicil failed, however, to restate the terms directing administration and distribution of this trust.

One child objected to Carol Sullivan's petition for probate of the July 2001 will and July 2003 codicil. Two other children joined the objection. The parties dispute whether Nancy Sullivan formally joined the objection as well. The three clearly objecting children drafted a settlement agreement with the estate and petitioned the district court to approve it. The agreement stated that the codicil would be construed only to revoke and replace the first paragraph of the article creating the John J. Sullivan Trust. The agreement further stipulated that the trustee could not make any distribution to a child unless the distributions were equal. The four other children who did not object to the petition consented to the terms of the agreement. Nancy Sullivan, however, objected to it and also filed a petition to receive a statutory family allowance from the estate, claiming that she was dependent on her father for support. Following a hearing, the district court approved the settlement agreement and denied Nancy Sullivan's request for a family allowance. The district court later denied Nancy Sullivan's motion for reconsideration and her alternative request for an extension to file a new-trial motion. Nancy Sullivan's appeal challenges the district court's decisions as it regards the agreement, her request for allowance, and representation of the estate by the will's notary.

## ISSUES

I. Did the district court err by approving a settlement agreement to which a beneficiary of the will did not consent?

II. Did the district court err by denying an adult child's request for a family allowance under Minn.Stat. § 524.4–404 (2004)?

III. Did the district court err by allowing the attorney who notarized the decedent's will to serve as counsel for the decedent's estate?

## ANALYSIS

### I

█ We first address Nancy Sullivan's challenge to the settlement agreement. Parties may settle a dispute related to admitting a will for probate by reaching a court-approved compromise. Minn.Stat. § 524.3–1101 (2004). To secure court approval of a proposed settlement, the terms of the agreement must be in writing and "executed by all competent persons ... having beneficial interests or having claims which will or may be affected by the compromise." *Id.* § 524.3–1102(1) (2004). An interested party may then submit the agreement to the district court, and the court will approve the agreement if it finds that the will contest or controversy is in good faith and that the agreement is just and reasonable. Id. § 524.3–1102(2)(3) (2004); *In re Estate of Schroeder,* 441 N.W.2d 527, 530 (Minn.App.1989), *review denied* (Minn. Aug. 15, 1989). A settlement agreement must defer to the testator's intent unless departing from his intent is reasonably necessary to protect the beneficiaries' interests. *Schroeder,* 441 N.W.2d at 532–33 (reversing approval of settlement agreement when contestants did not have good-faith challenge to validity of will and agreement eliminated spendthrift trust created by will). An approved compromise is binding and governs further disposition of the estate. Minn.Stat. §§ 524.3–1101, 524.3–1102(3).

Although the Sullivans' proposed settlement agreement complied with the statutory requirement that the agreement be in writing, the parties dispute whether the district court could approve the agreement without Nancy Sullivan's signature. This issue requires the interpretation of section 524.3–1102. Statutory interpretation is a question of law, which we review de novo. *Brookfield Trade Ctr., Inc. v. County* of Ramsey, 584 N.W.2d 390, 393 (Minn.1998). The goal of statutory interpretation is to effectuate the legislative intent. Minn. Stat. § 645.16 (2004). We look primarily to the statutory language. When the language of a statute is unambiguous, we apply its plain meaning. *Id.* If the language is ambiguous, however, we may consider other factors, such as the purpose of the statute and the consequences of a particular interpretation. *Id.; State v. Loge,* 608 N.W.2d 152, 155 (Minn.2000).

█ We hold that the district court erred in its interpretation of section 524.3–1102 as it regards the requirement that a proposed agreement be signed by persons "having beneficial interests or having claims which will or may be affected by the compromise." The plain language of the statute dictates that a valid proposed agreement must be signed by every member of two classes of persons—those with a beneficial interest and those with claims that will or may be affected by the proposed compromise. This literal understanding is also supported by section 524.3–1101, which states that an agreement resolving a will contest binds the parties to the agreement. Minn.Stat. § 524.3–1101 ("A compromise ... is binding on all the parties thereto."). An interpretation that does not require settlement consent by all parties with a beneficial interest would invite continued dispute, not resolution; beneficiaries who do not consent to the settlement would still take under the provisions of the will while the beneficiaries who do consent would take under the terms of an agreement that, by design, may have altered the will.

It is not disputed that Nancy Sullivan has a beneficial interest as John Sullivan's daughter because the residuary trust benefits John Sullivan's children. *See Black's Law Dictionary* 165, 828 (8th ed.2004) (defining "beneficial interest" as "[a] right or expectancy in something (such as a trust or an estate)"). Her signature was therefore required, and the district court erred by approving the settlement agreement without it.

■ The district court appears to have acknowledged this problem, but it concluded that the deficiency was cured because Nancy Sullivan did not make a good-faith will contest and the agreement is just and reasonable with respect to her interests. But this interpretation of section 524.3–1102 mistakenly merges the three distinct steps the section establishes for approving a compromise of a will contest and would effectively eliminate the statutory requirement of a writing signed by all parties with a beneficial interest. While other jurisdictions have applied substantial-compliance principles to statutes similar to section 524.3–1102, which is modeled on section 3–1102 of the Uniform Probate Code, we hold that failure to obtain consent from all required parties in a will-contest compromise is a significant defect so that a substantial compliance analysis is not triggered. *See In re Estate of Hedstrom,* 472 N.W.2d 454, 456–57 (N.D.1991) (finding that failure to present written agreement to court was not fatal because parties agreed on record to compromise, substantially complied with statutory provisions, and committed agreement to writing after presenting all terms to court). We therefore reverse the district court's approval of the agreement.

## II

■ Nancy Sullivan also challenges the district court's decision that she is not entitled to an allowance as a dependent. A decedent's surviving spouse and children who were being supported by the decedent are entitled to "a reasonable family allowance in money out of the estate." Minn. Stat. § 524.2–404(a) (2004). The district court found that Nancy Sullivan is ineligible for a family allowance because John Sullivan was not supporting her at the time of his death. We review the district court's factual findings for clear error. Minn. R. Civ. P. 52.01.

The record supports the district court's finding that Nancy Sullivan, who was 64 years old at the time of the hearing, was not an economic dependent of John Sullivan when he died. Nancy Sullivan testified that she began receiving money from her father in 1999 and last received a check from him in August 2003. She stated that the checks she received were dissimilar in amount and that she did not regularly receive them. She further testified that she used some of the money received during this period to start a business. These facts do not suggest dependency. Additionally, Carol Sullivan produced documents from an inquiry by the Social Security Administration that reflected that both John and Nancy Sullivan considered the money he gave her to be loans that she would repay. When she filed for bankruptcy in 2003, Nancy Sullivan listed John and Carol Sullivan as creditors for loans provided between 2000 and 2003. Although the record indicates that Nancy Sullivan has demobilizing medical conditions, and she bases most of her argument on appeal on descriptions of her present conditions and need for money, these arguments do not support her conclusion that John Sullivan was supporting her in early 2004. There is sufficient support in the record for the conclusion that the money she received from her father was in the form of a loan, that she did not

receive money consistently, and that she received no assistance from him in the six months immediately preceding his death. The district court did not clearly err in making its findings and the findings support its decision to deny Nancy Sullivan's request for a family allowance.

### III

 Nancy Sullivan argues that the district court erred by allowing attorney Charles Krekelberg to participate in the hearing on her petition for a family allowance because he notarized John Sullivan's will and codicil. Because Nancy Sullivan did not timely object to his participation, the district court had no opportunity to address the matter. We conclude that she has not preserved this issue for review on the merits. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (noting that appellate court generally will not consider matters not presented to district court).

### DECISION

We reverse the district court's approval of the proposed settlement agreement because the agreement was not consented to by all parties required to do so by Minn. Stat. § 524.3–1102 (2004). Because the record supports the district court's finding that Nancy Sullivan was not dependent on her father for support, we affirm the district court's denial of a statutory family allowance.

**Affirmed in part, reversed in part.**