IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| In re the ESTATE OF MARY A. RILEY, | ) | 2 CA-CV 2010-0149 |
| aka MARY AGNES RILEY, | ) | DEPARTMENT A |
| aka MARY AGNES REILLY. | ) | |
| | ) | O P I N I O N |
| _____ | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. P26266

Honorable Charles V. Harrington, Judge

AFFIRMED IN PART, VACATED IN PART, AND REMANDED

Jonathan W. Reich, P.C.
  By Jonathan W. Reich                                                          Tucson
                                     Attorney for Appellants R.J. Riley, Regina M. Riley,
                              F. Martin Riley, Neysa Kalil, Nora J. Simons, Cecelia Riley,
                                       Jude S. Riley, Loretta LaCorte, and Julia Riley


Mesch, Clark & Rothschild, P.C.
  By J. Emery Barker and Scott H. Gan                                          Tucson
                                                       Attorneys for John D. Barkley,
                                                     Successor Personal Representative


Law Office of Terrence A. Jackson
  By Terrence A. Jackson                                                       Tucson
                                                      Attorney for Joseph H. Riley, Jr.


Law Office of Dwight W. Whitley, Jr.
  By Dwight W. Whitley, Jr.                                                    Tucson
                                                        Attorney for Mary C. Benge


John A. Baade                                                                 Tucson
                                                          Attorney for Kathryn Riley

E C K E R S T R O M, Presiding Judge.

¶1 Appellants R.J. Riley, Regina Riley, F. Martin Riley, Neysa Kalil, Nora Simons, Cecelia Riley, Jude Riley, Loretta LaCorte, and Julia Riley (hereinafter "the objectors") appeal from the probate court's order approving a compromise between the personal representative of their mother's estate, John Barkley, and two of their siblings, Joseph Riley and Mary Benge, as well as a separate compromise between Barkley and their sibling, Kathryn Riley. Because the compromise between Barkley, Joseph, and Mary was not executed by all beneficiaries of the estate, as required by A.R.S. § 14-3952, it is void, and the probate court erred when it approved that compromise. But we will not disturb the court's approval of the compromise between Kathryn and Barkley because the objectors stipulated to its approval. Accordingly, we affirm the probate court's order in part and vacate it in part.

**Compromise with Joseph and Mary**[1]

¶2 Joseph and Mary were appointed co-personal representatives of their mother's estate in February 1996. In an effort to close the estate, they filed a proposal for its distribution in March 2006. A few months later, after receiving a draft of the estate accounting, R.J. Riley filed a petition to remove Joseph and Mary as co-personal representatives and to appoint a successor personal representative. In the petition, R.J.

---

[1]Although the term "settlement" has been used interchangeably with the term "compromise" in some of the relevant authority, *see, e.g.*, *In re Estate of Ward*, 200 Ariz. 113, ¶¶ 17-19, 23 P.3d 108, 112-13 (App. 2001), we have used "compromise" whenever possible throughout our decision because it is the term used in the relevant statutes. *See* A.R.S. §§ 14-3951, 14-3952.

2

alleged Mary and Joseph had breached their fiduciary duties and had administrated the estate improperly. R.J. also moved the probate court to appoint John Barkley as the successor personal representative of the estate. Joseph and Mary resigned as co-personal representatives, and the court granted the motion to appoint Barkley as their successor.

¶3        Pursuant to the probate court's order, Joseph and Mary filed an accounting for the estate, covering the period from February 1996 to July 2006. Barkley objected to the accounting, enumerating concerns about the lack of supporting documentation and inaccuracies apparent on the face of the document. Barkley requested a bench trial on the objection, which the court granted.

¶4        While the trial was pending, Barkley reached agreements with Mary, Joseph, and Kathryn. The agreement between Barkley, Mary, and Joseph contained a term stating it would be presented to the court for approval under A.R.S. §§ 14-3951 and 14-3952, and Barkley filed a "petition for approval of compromise of controversies" pursuant to those statutes in June 2009 for both of the agreements. Nine of the estate's thirteen beneficiaries (the objectors) filed an objection to the petition. After an evidentiary hearing, the court approved the compromises. The objectors moved for a new trial and for the court to reconsider its ruling. The court denied the motions, and this appeal followed.

¶5        We sua sponte reach the threshold question of whether the compromise agreement with Joseph and Mary is void for failing to be executed by all the necessary parties under § 14-3952(1). *See Nat'l Union Indem. Co. v. Bruce Bros*., 44 Ariz. 454, 467-68, 38 P.2d 648, 653-54 (1934) (where illegality of contract appears on face of

3

contract or appears from evidence necessary to prove contract, court has duty to declare contract void); *see also Clark v. Tinnin*, 81 Ariz. 259, 263, 304 P.2d 947, 950 (1956) (waiver and estoppel cannot be invoked against void contract); *cf. Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83 (1982) (federal court has duty to determine whether contract violates federal law before enforcing it). Because the issue was not addressed in the parties' original briefs, we ordered them to submit supplemental briefing on whether the compromise agreement is void. *Cf. State v. Curry*, 187 Ariz. 623, 626-27, 931 P.2d 1133, 1136-37 (App. 1996) (deciding issue raised sua sponte without benefit of supplemental briefing implicates due process concerns). Barkley has not argued, either in his supplemental brief or at oral argument, that the objectors waived the right to challenge the agreement on this ground by not raising it below. *See Van Loan v. Van Loan*, 116 Ariz. 272, 274, 569 P.2d 214, 216 (1977) (failure to raise issue in appellate briefs constitutes waiver); *Fid. Nat'l Title Co. v. Town of Marana*, 220 Ariz. 247, n.2, 204 P.3d 1096, 1099 n.2 (App. 2009) (affirmative defenses of waiver and estoppel can be waived if not argued below).

¶6        A compromise agreement is void unless executed in compliance with the governing statute.[2] *See Clark*, 81 Ariz. at 263, 304 P.2d at 950 (agreement in violation of

---

[2]We note the difference between a void contract and a voidable one. A voidable agreement is "subject to rescission or ratification," while a void agreement is "incapable of ratification or disaffirmance." *Princess Plaza Partners v. State*, 187 Ariz. 214, 222 n.5, 928 P.2d 638, 646 n.5 (App. 1995). Arizona law presumes that a contract in violation of statute is illegal and void unless legislative intent is to the contrary. *Yank v. Juhrend*, 151 Ariz. 587, 590, 729 P.2d 941, 944 (App. 1986); *see, e.g., Smith v. Pinnamaneni*, 227 Ariz. 170, ¶ 9, 254 P.3d 409, 412-13 (App. 2011) (applicability of substantial compliance doctrine to statute makes contract based on its terms voidable not

4

state's public policy as reflected in statutes "void as against public policy"); *cf. W. Corr. Grp. v. Tierney*, 208 Ariz. 583, ¶ 13, 96 P.3d 1070, 1073 (App. 2004) (public contract entered in violation of statute void). Section 14-3952(1) requires the compromise to be "executed by all competent persons . . . having beneficial interests or having claims which will or may be affected by the compromise." We interpret statutes according to their plain meaning if the language is clear. *Nordstrom, Inc. v. Maricopa Cnty*., 207 Ariz. 553, ¶ 10, 88 P.3d 1165, 1168-69 (App. 2004). And, the plain language of § 14-3952(1) provides that a compromise that has not been executed by all of the persons with beneficial interests in the estate is void.[3] *See, e.g.*, *In re Estate of Sullivan*, 724 N.W.2d 532, 535-36 (Minn. Ct. App. 2006) (analyzing identical provision to § 14-3952); *cf. Wilmot v. Wilmot*, 203 Ariz. 565, ¶ 18, 58 P.3d 507, 512 (2002) (discussing § 14-3952(1) by analogy and noting it requires consent of all beneficiaries and claimants by formal agreement); *In re Estate of Leathers*, 876 P.2d 619, 620 (Kan. Ct. App. 1994) (mediation agreement resulting from disputes over administration of will unenforceable for lacking signature of one of beneficiaries as required by statute); *In re Estate of Outen*, 336 S.E.2d 436, 437 (N.C. Ct. App. 1985) (family settlement agreements generally "invalid unless all who receive under the will join in the agreement"); *In re Estate of Webb*, 266 S.W.3d

---

void). Here, where the statute on its face requires strict compliance with its terms, we will apply the presumption that a contract not in compliance is void. Barkley conceded at oral argument that the agreement here would be void if it did not contain the signatures of all necessary parties.

[3]A beneficial interest is "[a] right or expectancy in something (such as a trust or an estate), as opposed to legal title to that thing." *Black's Law Dictionary* 885 (9th ed. 2009).

544, 550-51 (Tex. App. 2008) ("A family settlement agreement generally requires that all the beneficiaries of a will be included in the agreement.").[4]

¶7 Barkley counters neither the general proposition that a compromise agreement not in compliance with the statute is void, nor the contention that this court must vacate a trial court's order approving a void agreement. Rather, Barkley argues he complied with § 14-3952, which, he maintains, only requires "the signatures of parties to the proposed settlement and not the agreement of all beneficiaries of the probate estate." But, "[t]he plain language of the statute dictates that a valid proposed agreement must be signed by every member of two classes of persons—those with a beneficial interest and those with claims that will or may be affected by the proposed compromise." *Estate of Sullivan*, 724 N.W.2d at 535. Barkley concedes that the objectors as heirs have a beneficial interest in the estate, but he attempts to distinguish *Sullivan* and avoid its interpretation of the Uniform Probate Code on the ground the compromise in that case affected the estate's distribution scheme. However, the terms of the compromise here also affect the distribution of the estate. They require Joseph to disclaim his interest in the estate, Joseph and Mary to partially reimburse the estate for its losses, and the estate to withdraw its objections to Joseph and Mary's 2006 accounting. *See Estate of Leathers*, 876 P.2d at 620 (mediation agreement among beneficiaries over disputes arising from

---

[4]Agreements among family members to change the distribution of property provided for in a will are often referred to as "family settlement agreements." *See, e.g.*, *In re Estate of Ward*, 200 Ariz. 113, ¶ 17, 23 P.3d 108, 117-18 (App. 2001); *Ind. Dep't of State Revenue v. Estate of Pickerill*, 855 N.E.2d 1082, 1084-85 (Ind. T.C. 2006).

administration of estate was family settlement agreement because it "distribute[d] property in a manner different from the will").

¶8        Barkley further contends that broad application of the signature requirement set forth in § 14-3952(1) "would not only be impractical, it would also render the notice and approval requirements contained in A.R.S. § 14-3952(3) superfluous." Section 14-3952(3) requires that before the court approves a settlement, notice must be given to "all interested persons or their representatives." "Interested person" is defined to "include[] any trustee, heir, devisee, child, spouse, creditor, beneficiary, person holding a power of appointment and other person who has a property right in or claim against a trust estate or the estate of a decedent." A.R.S. § 14-1201(26). Further, what constitutes an interested person "may vary from time to time and must be determined according to the particular purposes of, and matter involved in, any proceeding." *Id*.

¶9        We disagree that a plain application of § 14-3952(1) would render the requirements of § 14-3952(3) superfluous. Section 14-3952(1) imposes the signature requirement only for those "having beneficial interests or having claims which will or may be affected by the compromise." By contrast, § 14-3952(3) creates notice requirements for all "interested persons or their representatives." As noted, the definition of "interested persons" encompasses not only those with "beneficial interests or . . . claims which will or may be affected by the compromise," § 14-3952(1), but also others who merely are interested in the estate, including those who have no such claim or beneficial interest. *See* § 14-1201(26). Thus, although all those having beneficial interests protected by the signature requirement set forth in § 14-3952(1) also would be

7

entitled to notice under § 14-3952(3), not all persons entitled to notice under § 14-3952(3) necessarily are required to execute a compromise. And, even if in a particular case all persons entitled to notice under § 14-3952(3) also must execute the compromise pursuant to § 14-3952(1), the requirement that the interested persons be given notice of the court's pending action on the compromise is not superfluous because if the compromise is approved by the court, it is binding on all parties to the agreement. *See Cravens, Dargan & Co. v. Superior Court*, 153 Ariz. 474, 476, 737 P.2d 1373, 1375 (1987) (due process in judicial determinations requires notice and hearing to bind parties).

¶10 Barkley contends that because the beneficiaries would not have been precluded from filing separate claims against Joseph or Mary, the beneficiaries would not fall into the category of those having "claims which will or may be affected by the compromise." § 14-3952(1). But Barkley overlooks that the signature requirement applies independently to those with "beneficial interests" in the estate, whether or not their claims will be "affected by the compromise." *See Estate of Sullivan*, 724 N.W.2d at 535. Even assuming the signature requirement here was limited to those having claims affected by the compromise, we cannot agree the beneficiaries here would be unaffected. The settlement agreement in question provides that "the Estate, including its assigns and distributees," gives up the right to "any and all claims" against Joseph and Mary. To the extent they have a beneficial interest in the estate, the beneficiaries clearly have claims that are or may be affected by the compromise. Accordingly, the objectors fall under both classes of persons that must sign a compromise agreement pursuant to § 14-3952(1):

8

"those with a beneficial interest and those with claims that will or may be affected by the proposed compromise." *Estate of Sullivan*, 724 N.W.2d at 535.

¶11 Finally, Barkley contends that "requiring all beneficiaries to sign the proposed settlement agreement would contravene the role of the personal representative and the purpose of these statutes." He emphasizes that personal representatives have the power to reach a settlement with any "debtor or obligor." A.R.S. § 14-3715(17). But, to the extent Mary or Joseph could be considered as such, they also are beneficiaries of the estate, and the compromise agreement here, as discussed, expressly redistributes the estate. Under such circumstances, we cannot characterize the compromise agreement here as a mere assertion of the personal representative's power to settle debts and obligations of the estate.[5] And, although we agree with Barkley that the purpose of §§ 14-3951 and 14-3952 is to encourage settlements, their purpose also is to "put the authority for initiating settlement proposals with the persons who have beneficial interests in the estate, and to prevent executors and testamentary trustees from vetoing any such proposal." Unif. Probate Code § 3-1102 cmt., 8 U.L.A. pt. II, at 305 (1998); *see also Wilmot*, 203 Ariz. 565, ¶ 18, 58 P.3d at 512 (in analogous context of settling wrongful death action, stating person in representative capacity must obtain consent to settlement of all persons whose claims affected). Thus, at minimum, the statute seeks to

---

[5]In fact, Barkley consistently has maintained his position that this compromise agreement is governed by §§ 14-3951 and 14-3952. The objectors argue the agreement is not governed by those statutes. But the objectors' argument, raised for the first time in their supplemental brief, does not change our conclusion that §§ 14-3951 and 14-3952 apply to the compromise with Joseph and Mary.

9

keep the power to make compromises involving the structure of the estate in the hands of the estate's beneficiaries.[6]

**¶12** Moreover, nothing about the requirements of §§ 14-3951 and 14-3952, or this decision interpreting it, dictates that a personal representative must obtain the approval of the estate's beneficiaries in every situation involving a settlement of the estate's claims. Nor can we overlook that Barkley, Joseph, and Mary agreed to subject themselves to the requirements of §§ 14-3951 and 14-3952 by the express terms of the compromise. And, § 14-3951 limits by its terms the types of agreements subject to the requirements of § 14-3952 to "any controversy as to admission to probate of any instrument offered for formal probate as the will of a decedent, the construction, validity or effect of any probated will, the rights or interests in the estate of the decedent, of any successor, or the administration of the estate." We acknowledge the term "administration of the estate" is general and could, when read out of context with the broader statutory scheme, be interpreted to require that all beneficiaries approve every action of the personal representative. But, in this case, we need only decide whether an agreement that changes the estate's distribution scheme among beneficiaries requires the approval of the beneficial interest holders. *See Estate of Leathers*, 876 P.2d at 620. For the foregoing reasons, we conclude that it does.

---

[6]Indeed, courts have allowed beneficiaries to modify the executor's powers by family settlement agreements. *See, e.g.*, *Harrison v. Prentice*, 38 A.2d 101, 105 (Md. 1944); *Wachovia Bank & Trust Co. v. Allen*, 60 S.E.2d 117, 121 (N.C. 1950).

¶13　　　　Because § 14-3952 plainly requires the objectors to have executed the agreement, we conclude the trial court erred when it approved the compromise with Joseph and Mary.[7] We vacate the judgment in part and remand the case for further proceedings.

**Compromise with Kathryn Riley**

¶14　　　　Barkley filed a complaint against Kathryn in April 2008, asserting she owed the estate two and one-half years of unpaid rent. After determining the estate had no valid claim, Barkley agreed, on behalf of the estate, to release Kathryn from all present and future claims in exchange for Kathryn waiving a potential claim of attorney fees and costs against the estate. In November 2009, Kathryn, Barkley, and the objectors stipulated to compromise the estate's claims involving Kathryn by way of the release and the dismissal of the unpaid rent claim with prejudice. The trial court approved the stipulation. Yet, despite this stipulation, the objectors still opposed the compromise with Kathryn. And, after a hearing, the court approved the compromise as just and reasonable. This appeal followed the denial of the objectors' motion for new trial.

¶15　　　　The objectors concede "[t]he agreement with Kathryn was not contingent upon court approval," yet repeatedly complain that Barkley presented no evidence about the reasonableness of the compromise with Kathryn. However, the objectors do not

---

[7]One beneficiary, George Riley, is not a party to this appeal; however, as a person with a beneficial interest in the estate, he too is required to execute any compromise agreement under §§ 14-3951 and 14-3952, unless his "whereabouts is unknown and cannot reasonably be ascertained." § 14-3952(1).

address the stipulation they entered into that approved the compromise with Kathryn.[8] That stipulation states the release "is valid and binding on [Barkley] notwithstanding any action that the Court may take on [Barkley's] Petition for Approval of Compromise of Controversies." The stipulation further provides that the estate's complaint against Kathryn "is dismissed with prejudice."

¶16 An appellant cannot purport to be an aggrieved party on appeal regarding a claim the appellant stipulated be dismissed with prejudice. *See, e.g.*, *Harris v. Cochise Health Sys.*, 215 Ariz. 344, ¶ 14, 160 P.3d 223, 227-28 (App. 2007); *see also Contempo-Tempe Mobile Home Owners Ass'n v. Steinert*, 144 Ariz. 227, 228, 696 P.2d 1376, 1377 (App. 1985) (appeal moot when "substantive questions raised have already been resolved by the stipulation dismissing the suit with prejudice"). Because the objectors agreed to stipulate that the release with Kathryn was binding without court approval, we will not overturn the court's subsequent approval of it.

### Disposition

¶17 The order is affirmed in part, vacated in part, and remanded for further proceedings.

/s/ *Peter J. Eckerstrom*

PETER J. ECKERSTROM, Presiding Judge

---

[8]F. Martin Riley, one of the objectors on appeal, and George Riley, a beneficiary of the estate who is not a party to this appeal, apparently did not enter into the stipulation with the other objectors. However, both were given notice of the compromise with Kathryn and an opportunity to object. *Cf. Garn v. Garn*, 155 Ariz. 156, 159-60, 745 P.2d 604, 607-08 (App. 1987) (due process requires party to stipulation be given notice and opportunity to defend). And neither has argued he is not bound by the stipulation because of the omission. We therefore do not address the issue further. *See Polanco v. Indus. Comm'n*, 214 Ariz. 489, n.2, 154 P.3d 391, 393 n.2 (App. 2007).

12

CONCURRING:

/s/ *Joseph W. Howard*

JOSEPH W. HOWARD, Chief Judge


/s/ *J. William Brammer, Jr.*

J. WILLIAM BRAMMER, JR., Judge