SUPREME COURT OF ARIZONA
En Banc

In re the ESTATE OF MARY A.      ) Arizona Supreme Court
RILEY, aka MARY AGNES RILEY, aka ) No.  CV-12-0007-PR
MARY AGNES REILLY.               )
                                 )
                                 ) Court of Appeals
                                 ) Division Two
                                 ) No.  2 CA-CV 10-0149
                                 )
                                 ) Pima County
                                 ) Superior Court
                                 ) No.  P26266
                                 )
_____  )
                                 ) **O P I N I O N**


Appeal from the Superior Court in Pima County
The Honorable Charles V. Harrington, Judge

**REMANDED**

_____

Opinion of the Court of Appeals, Division Two
228 Ariz. 382, 266 P.3d 1078 (App. 2011)

**VACATED**

_____

JONATHAN W. REICH, P.C.                                    Tucson
     By   Jonathan W. Reich
Attorneys for R. J. Riley, Regina M. Riley,
F. Martin Riley, Neysa Kalil, Nora J. Simons,
Cecelia Riley, Jude S. Riley, Loretta LaCorte,
and Julia Riley

MESCH, CLARK & ROTHSCHILD, P.C.                            Tucson
     By   J. Emery Barker
          Scott H. Gan
Attorneys for John D. Barkley

LAW OFFICE OF DWIGHT M. WHITLEY, JR., P.L.L.C.            Benson/
     By   Dwight M. Whitley, Jr.                           Tucson
Attorneys for Mary Benge

LAW OFFICE OF TERRENCE A. JACKSON                          Tucson
     By   Terrence A. Jackson
Attorneys for Joseph H. Riley, Jr.

_____

**B E R C H**, Chief Justice

**¶1**      We granted review to decide whether A.R.S. § 14-3952(1) requires beneficiaries of an estate to unanimously approve a settlement agreement.  We hold that the statute requires all beneficiaries to execute the agreement if it affects beneficial interests in the estate and the settling parties seek court approval pursuant to A.R.S. § 14-3951.

## I.   FACTS AND PROCEDURAL HISTORY

**¶2**      Mary A. Riley ("Decedent") died in 1996, leaving her estate to her thirteen children and appointing her two oldest, Joseph Riley and Mary Benge, as co-personal representatives. The family settled the estate's distribution scheme in 1997 through a Family Compromise Agreement that divided the estate among the thirteen children.  Nine years later, in March 2006, Joseph and Mary filed a petition to distribute and close the estate.  The petition included an accounting of the amounts they had spent administering the estate.

**¶3**      One of Decedent's other children, R. J. Riley, objected to the accounting.  He asserted that Joseph and Mary had breached their fiduciary duties, and he sought the appointment of a successor personal representative ("PR").  Joseph and Mary resigned, and the probate court appointed John Barkley as the new PR.  The court ordered Joseph and Mary to file another accounting.  After reviewing it, Barkley objected, citing the

2

"lack of supporting documentation and inaccuracies apparent on the face of the document." The court scheduled a hearing on the PR's objection.

**¶4** While awaiting the hearing, Barkley settled the estate's claims against Joseph and Mary.[1] The settlement agreement required Joseph to pay $15,000 and disclaim his interest in the estate; Mary was to pay $50,000, but retain her interest in the estate. In exchange, the estate agreed to release all claims against Joseph and Mary relating to their activities as co-PRs. The agreement also required the "parties signatory [t]hereto" to present the agreement to the probate judge for approval under A.R.S. §§ 14-3951 and -3952. Although only Barkley, Joseph, and Mary had signed the agreement, it provided that "[t]his Agreement shall bind and inure to the benefit of the heirs, assignees and distribute[e]s of the Parties." Their goal was to prevent further litigation stemming from Joseph and Mary's administration of the estate.

**¶5** Nine of Decedent's thirteen children (the "Objectors"), none of whom had executed the agreement, objected to the settlement. Nonetheless, after an evidentiary hearing, the probate court approved the agreement, finding that it settled a good faith dispute and its terms were reasonable.

---

[1] The agreement also resolved the estate's claims against Kathryn Riley. That settlement is not at issue here.

3

¶6      The Objectors appealed.  The court of appeals sua sponte ordered the parties to brief whether the agreement was "void for failing to be executed by all the necessary parties under § 14-3952(1)."  *In re Estate of Riley*, 228 Ariz. 382, 384 ¶ 5, 266 P.3d 1078, 1080 (App. 2011).

¶7      Following oral argument, the court concluded that the statute required all estate beneficiaries to sign the settlement agreement.  *Id.* at 386 ¶ 10, 266 P.3d at 1082.  The court voided the agreement because not all beneficiaries had signed it.  *Id.* at 384-86 ¶¶ 6-10, 266 P.3d at 1080-82.

¶8      We granted Barkley's petition for review because this case presents an important issue of first impression.  We have jurisdiction under Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## II.  DISCUSSION

¶9      We review statutory interpretation issues de novo. *Duncan v. Scottsdale Med. Imaging, Ltd.*, 205 Ariz. 306, 308 ¶ 2, 70 P.3d 435, 437 (2003).  Because the probate statutes have not materially changed during the pendency of this action, we cite the current version of each.

¶10     A.R.S. § 14-3952 sets forth a procedure for securing court approval of a compromise of disputed interests in the estate.  It imposes the following requirements:

4

> 1.    The terms of the compromise shall be set forth in an agreement in writing which shall be executed by all competent persons . . . having beneficial interests or having claims which will or may be affected by the compromise.
> . . . .
> 3.    After notice to all interested persons . . ., if [the court] finds that the contest or controversy is in good faith and that the effect of the agreement upon the interests of persons . . . is just and reasonable, [the court] shall make an order approving the agreement . . . . Upon the making of the order and the execution of the agreement, all further disposition of the estate is in accordance with the terms of the agreement.

A.R.S. § 14-3952.  If these statutory procedures are satisfied and the court formally approves the agreement, A.R.S. § 14-3951 provides that the compromise "is binding on all the parties thereto including those unborn, unascertained or who could not be located."  Sections 14-3951 and -3952 thus act together to permit parties to resolve estate controversies with finality.

¶11    Sections 14-3951 and -3952 mirror §§ 3-1101 and -1102 of the 1969 Uniform Probate Code, *see* 1973 Ariz. Sess. Laws, ch. 75, § 4 (1st Reg. Sess.), which, in turn, were based on §§ 93 and 94 of the 1946 Model Probate Code.  *See* Unif. Probate Code § 3-1102 cmt. (1969).  Sections 14-3951 and -3952 allow parties to enter into settlement agreements that, upon court approval, bind all interested parties, even if interested parties are not competent or available to enter into the agreement.  *See* A.R.S. § 14-3951; Unif. Probate Code § 3-1102 cmt. (stating that "[t]his section and the one preceding it outline a procedure"

5

for "resolving controversy concerning the estate"); *see also In re Estate of Ward*, 200 Ariz. 113, 116 ¶ 12, 23 P.3d 108, 111 (App. 2001) (providing that "[§] 14-3952 authorizes the probate court to approve a compromise under [§] 14-3951 only if" the procedures in § 14-3952 are met); *accord Matter of Estate of Hedstrom*, 472 N.W.2d 454, 456 (N.D. 1991) (to same effect).

¶12     The parties disagree whether § 14-3952(1) requires all beneficiaries to execute the agreement at issue.  Barkley contends that §§ 14-3951 and -3952 distinguish disputes over the administration of the estate from "disputes over the structure and distribution of the estate."  He concedes that the statutes "clearly require[] all the beneficiaries to agree to modify the structure or distribution scheme."  He argues, however, that the statutes do not require all beneficiaries to execute a compromise if it merely resolves a dispute over the administration of the estate.  For such an agreement, Barkley asserts, the statutes require only those directly involved in the controversy to execute the agreement.  He maintains that the agreement here settled merely an administrative dispute — the estate's claims against its former co-PRs — and thus required signatures only from him, Joseph, and Mary.

¶13     Barkley mischaracterizes the agreement, however.  In it, Joseph disclaimed his interest in the estate, which altered the distribution scheme by dividing the estate among twelve

6

beneficiaries instead of the thirteen who took under the 1997 Family Compromise Agreement. The agreement thus affected the "beneficial interests" of the remaining twelve beneficiaries, and § 14-3952(1) therefore required all of the beneficiaries to execute the agreement before the court could properly approve it under the statute.[2] *See In re Estate of Sullivan*, 724 N.W.2d 532, 535 (Minn. Ct. App. 2006) (holding that an agreement that altered the distribution scheme required the signatures of all those with a beneficial interest); *cf. Matter of Estate of Outen*, 336 S.E.2d 436, 436-37 (N.C. Ct. App. 1985) (noting that an agreement adding a beneficiary affected the distribution scheme). Thus, because only Barkley, Joseph, and Mary signed the agreement, the probate court's approval under § 14-3952 was invalid to make the agreement binding on those who did not sign it.

**¶14** Barkley contends that the settlement did not affect the distribution scheme because "[n]one of the other twelve beneficiaries . . . had their one-thirteenth distributive share

---

[2] Because the agreement here affected all of the devisees' beneficial interests, we need not decide whether § 14-3952(1) always requires the beneficiaries to unanimously agree or whether it requires only the *affected* beneficiaries to unanimously agree. *Compare* S.C. Code Ann. § 62-3-1102 cmt. (interpreting nearly identical statute to mean that only those whose beneficial interests will be affected must execute the agreement), *with In re Estate of Sullivan*, 724 N.W.2d 532, 535 (Minn. Ct. App. 2006) (reading nearly identical statute to require execution by every person with a beneficial interest).

*diminished* in any way." But § 14-3952(1) does not distinguish based on whether a beneficial interest is positively or adversely affected. To adopt such a position would require us to add words to the statute that are not there.[3]

¶15 Barkley argues that requiring all beneficiaries to sign compromises like the one at issue here would impede resolution of disputes, add expense, and delay estate administration. We agree. But nothing in this opinion or the statutory probate scheme *requires* Barkley to use §§ 14-3951 and -3952 to compromise disputes. The probate statutes allow a beneficiary to disclaim his interest without court approval, *see* A.R.S. § 14-10005, and permit the PR to settle a variety of claims without court approval, *see, e.g.,* A.R.S. § 14-3715(17), (27); A.R.S. § 14-3813. If in doubt about how to proceed, the PR also "may invoke the jurisdiction of the court . . . to resolve questions concerning the estate or its administration." A.R.S. § 14-3704; *see also, e.g.,* §§ 14-3105, -3401, -3414 (authorizing proceedings to resolve a variety of issues).

¶16 Here, however, Barkley sought court approval to bind all beneficiaries and insulate the settlement from further challenge – and himself from potential future liability as PR –

---

[3]  The Objectors argue that the losses caused by Joseph and Mary exceeded the settlement amount, and, therefore, despite Joseph's relinquishment of his interest in the estate under the settlement, the Objectors' interests were adversely affected.

by invoking §§ 14-3951 and -3952. Although nothing precludes attempting such a course of action, it requires compliance with § 14-3952's procedures, including, in this case, obtaining the signatures of "all competent persons . . . having beneficial interests."

¶17 The failure to secure the signatures of all beneficiaries did not, however, make the agreement void for all purposes, as the court of appeals concluded. *See Riley*, 228 Ariz. at 384-85 ¶ 6 & n.2, 266 P.3d at 1080-81 & n.2. Rather, the failure to comply with § 14-3952 simply means that the probate court's approval was not effective to make the agreement binding on all beneficiaries. *See In re Estate of Grimm*, 784 P.2d 1238, 1242-43 (Utah Ct. App. 1989) (discussing statutes nearly identical to Arizona's and stating that they "merely outline[] the procedures for securing court approval"; they "do[] not invalidate an otherwise valid compromise agreement between the parties prior to court approval").

### III.  CONCLUSION

¶18 For the reasons set forth above, we vacate the opinion of the court of appeals and remand to the superior court for further proceedings consistent with this opinion.

_____
Rebecca White Berch, Chief Justice

9

CONCURRING:

_____
Scott Bales, Vice Chief Justice


_____
A. John Pelander, Justice


_____
Robert M. Brutinel, Justice


_____
Peter J. Cahill, Judge*


\* Pursuant to Article 6, Section 3 of the Arizona Constitution, the Honorable Peter J. Cahill, Presiding Judge of the Superior Court in Gila County, was designated to sit in this matter.