NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

In the Matter of the Estate of:

RUMAIN BRISBON

DECEASED

---

LAW OFFICE OF GREGORY L. LATTIMER, PLLC, *Appellant*,

*v.*

NORA BRISBON, et al., *Appellees*.

No. 1 CA-CV 19-0389
FILED 6-9-2020

---

Appeal from the Superior Court in Maricopa County
No. PB2015-000082
The Honorable Jay M. Polk, Judge

**AFFIRMED**

---

COUNSEL

Law Office of Florence M. Bruemmer, P.C., Anthem
By Florence M. Bruemmer
*Counsel for Appellant*

Jennings, Haug & Cunningham, L.L.P., Phoenix
By Hillary P. Gagnon
*Counsel for Appellee Nora Brisbon*

Rubin Law PLC, Phoenix
By Alexandra S. Rubin
*Counsel for Appellee Tracy O'Neil*

The Law Office of Marci A. Kratter, Phoenix
By Marci A. Kratter
*Counsel for Appellees Dana L. Klinger and Tyra Winston*

---

## MEMORANDUM DECISION

Judge David B. Gass delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Maria Elena Cruz joined.

---

**G A S S**, Judge:

¶1        The Law Offices of Gregory L. Lattimer, PLLC (Lattimer Law), appeals the superior court's order adopting recommendations in the Amended Special Master's Report (the Amended Report) and the Supplement to the Amended Special Master's Report (the Supplement) regarding the allocation of attorney fees based on a tort claim settlement after Rumain Brison's death. For the following reasons, this court affirms.

### FACTUAL AND PROCEDURAL HISTORY

¶2        To avoid confusion, this court refers to parties by their first names. In 2014, a City of Phoenix police officer shot and killed Rumain. Rumain died intestate and is survived by his parents—Ricky and Nora—and four minor children: SNB, ZLC, SAB, and AJR.

¶3        Mykel, AJR's mother, retained Lattimer Law to represent her in connection with claims for damages AJR sustained from Rumain's death. Mykel also retained the Jenkins Law Firm (Jenkins Law) to represent her in the separate guardianship and probate matters. Later, Mykel signed a new retainer agreement retaining both Lattimer Law and Jenkins Law to represent her in connection with AJR's claims. Under the retainer agreement, Mykel agreed to a 40% contingency fee if a lawsuit was filed.

¶4            Ricky also retained Lattimer Law and Jenkins Law as his attorneys. Ricky signed a contingency fee agreement identical to Mykel's. Several months later, Nora retained the Rake Law Group (Rake Law) as counsel, also agreeing to a 40% contingency fee. Four other attorneys represented various beneficiaries, including SNB, ZLC, and SAB. Nothing in the record suggests the other beneficiaries signed a fee agreement with Lattimer Law, Jenkins Law, or Rake Law.

¶5            Mykel was appointed personal representative of Rumain's estate. Mykel served as the personal representative until she was removed and replaced by Nora. The day after Nora's appointment, Nora executed a new contingency fee agreement with Rake Law. The new agreement was similar to the original agreement, but it identified Nora as "Personal Representative of the Estate of Rumain Brisbon."

¶6            Nora filed a lawsuit in federal court on behalf of the estate and several of the statutory wrongful death beneficiaries—Rumain's four minor children and his parents. The parties to the federal lawsuit participated in a settlement conference, which resulted in a $1.2 million global settlement on behalf of the estate and the statutory wrongful death beneficiaries.

¶7            The wrongful death beneficiaries could not agree on how to allocate the $1.2 million federal settlement and could not come to an agreement on the payment of attorney fees. Nora, in her capacity as personal representative, filed a Petition for Approval of Allocation of Settlement. Mykel and Ricky, through Jenkins Law, opposed the motion and filed a counter petition. Because the parties could not agree on the allocation, the superior court appointed a special master to address the issues the parties raised. *See* Ariz. R. Civ. P. 53.

¶8            The special master ultimately filed the Amended Report. In the Amended Report, the special master recommended the estate receive $360,000 from the $1.2 million federal settlement and the balance be allocated to ZLC, SAB, and AJR, the remaining minor children. The estate's 40% contingency fee obligation for the $360,000 is $144,000. The special master recommended Nora allocate the estate's contingency fee as follows: (a) 25% to Rake Law, and (b) 75% to Lattimer Law and Jenkins Law. The special master further recommended the estate pay all Lattimer Law's costs and expenses but not his travel expenses.

¶9            Lattimer Law objected to the Amended Report on behalf of itself, not on behalf of any of the estate's beneficiaries. The superior court heard oral arguments, at which only Lattimer Law and Jenkins Law

(representing Mykel and Ricky), objected to the Amended Report. The superior court could not resolve the objections without additional information and resubmitted the matter to the special master. The special master filed the Supplement. Lattimer Law, again acting on its own behalf, was the only party to object to the Supplement.

¶10        Except for an unrelated matter, the superior court adopted the recommendations from the Amended Report and the Supplement. Lattimer Law, again acting on its own behalf, timely appealed the superior court's order. This court has jurisdiction under Article 6, Section 9, of the Arizona Constitution, and A.R.S. § 12-2101.A.

## ANALYSIS

### I.    Lattimer Law does not have standing to challenge the $360,000 allocation of the federal settlement proceeds to the estate.

¶11        "Unless there are fact issues that require resolution, whether a party has standing to sue is a question of law, which" this court reviews *de novo. See Center Bay Gardens, L.L.C. v. City of Tempe City Council*, 214 Ariz. 353, 356, ¶ 15 (App. 2007). A party has standing to appeal a superior court judgment or order if the party is "aggrieved" by it. *See Chambers v. United Farm Workers Org. Comm., AFL-CIO*, 25 Ariz. App. 104, 107 (1975). A party is aggrieved if the order denies the party a personal or property right, or imposes a substantial burden or obligation on the party. *Kerr v. Killian*, 197 Ariz. 213, 216, ¶ 10 (App. 2000).

¶12        Lattimer Law argues it has standing because it did not receive fair compensation for the legal services it provided in the federal litigation. It does not. The beneficiaries have personal and property rights regarding the allocation of $360,000 from the federal settlement proceeds to the estate. They have a direct interest in the corpus of the settlement. Lattimer Law, however, is not a beneficiary of the estate. It represents only itself and its interest. Lattimer Law's interest, and therefore its standing, goes to the allocation of attorney fees between the attorneys, not to the allocation of the federal settlement proceeds between the estate and the beneficiaries. *See id.*

### II.   Lattimer Law cannot recover attorney fees from the $1.2 million federal settlement based on the common fund doctrine.

¶13        Lattimer Law argues the common fund doctrine applies because its efforts helped all the beneficiaries, not just its own clients. Under the common fund theory, Lattimer Law's contingency fee would be based on the entire $1.2 million federal settlement, instead of the $360,000 the

superior court allocated to the estate. The superior court rejected Lattimer Law's argument, finding it could not accurately trace the benefits Lattimer Law provided and could not transfer the costs with precision.

¶14 This court reviews attorney fee awards for abuse of discretion but reviews a superior court's authority to use a specific method for determining attorney fees *de novo. See Burke v. Ariz. State Ret. Sys.*, 206 Ariz. 269, 272, ¶ 6 (App. 2003). Generally, "in the absence of statute or contract, each side in a litigated case must bear its own attorneys' fees . . . ." *Id.* at ¶ 7. The common fund doctrine is an equitable exception to the general rule. *Id.* "The doctrine serves the twofold purpose of compensating counsel for producing benefits for a class and preventing the unjust enrichment of the class members who receive them." *Valder Law Offices v. Keenan Law Firm*, 212 Ariz. 244, 249, ¶ 15 (App. 2006) (internal quotations omitted). The common fund doctrine applies when parties who benefitted from the efforts of counsel in creating a common fund should pay their fair share of the work required to create the fund. *See id.*

¶15 Under the common fund doctrine, this court considers whether: (1) the classes of persons benefitting from the lawsuit were small and easily identifiable; (2) the benefits could be traced accurately; and (3) the costs could be shifted to those benefitting with some precision. *See Kerr*, 197 Ariz. at 219, ¶ 24 (internal citation omitted). Because of the second and third elements, "Arizona wrongful death law presents problems for the application of the common fund doctrine when more than one counsel meaningfully participate in establishing an award." *See Valder Law*, 212 Ariz. at 251, ¶ 23.

¶16 Lattimer Law satisfies the first element because the statutory beneficiaries and the estate are a small and easily identifiable class. Lattimer Law, however, did not satisfy the second and third elements. *See id.* at ¶ 24. Other counsel meaningfully and vigorously represented the other beneficiaries in the federal lawsuit. Though Lattimer Law's actions were of value to the beneficiaries, such value cannot be traced accurately, and the costs cannot be allocated with precision. The superior court, therefore, correctly ruled the common fund doctrine did not apply. *See id.*

### III. Lattimer Law cannot recover attorney fees beyond the estate's $360,000 share of the federal settlement based on *quantum meruit*.

**¶17** Lattimer Law argues the superior court should have used *quantum meruit* to award Lattimer Law's contingency fee based on the entire $1.2 million federal settlement, not just the estate's $360,000 share.[1]

**¶18** Lattimer Law arguably waived this claim. "The general law in Arizona is that legal theories must be presented timely to the trial court so that the court may have an opportunity to address all issues on their merits." *Cont'l Lighting & Contracting, Inc. v. Premier Grading & Utils., LLC*, 227 Ariz. 382, 386, ¶ 12 (App. 2011). "If the argument is not raised below so as to allow the trial court such an opportunity, it is waived on appeal." *Id.* Because Lattimer Law raised this issue late, the superior court could not fully address it. Because waiver is discretionary and this court can resolve the issue as a matter of law, this court addresses the merits. *See City of Tucson v. Clear Channel Outdoor, Inc.*, 209 Ariz. 544, 552, ¶ 33 n.9 (2005).

**¶19** As noted above, this court reviews a superior court's legal authority to use a specific method for determining attorney fees *de novo*. *See Burke*, 206 Ariz. at 272, ¶ 6. Longstanding precedent establishes an attorney may claim fees from a client in *quantum meruit* only if "the amount of compensation claimed *is not fixed* by an agreement between the parties." *Schwartz v. Schwerin*, 85 Ariz. 242, 245 (1959) (emphasis added).

**¶20** Lattimer Law cites no case, Arizona or otherwise, allowing an attorney to collect attorney fees in *quantum meruit* from a person with whom the attorney has no attorney-client relationship. This court, further, has barred recovery of attorney fees in *quantum meruit* when the fee agreement was void as against public policy. *See, e.g.*, *Levine v. Haralson, Miller, Pitt, Feldman & McAnally, P.L.C.*, 244 Ariz. 234, 239, ¶ 19 (App. 2018) (ruling attorney could not recover attorney fees in *quantum meruit* based on unenforceable oral contingency fee agreement).

**¶21** Consistent with *Levine*, this court declines to extend *Schwartz* beyond its narrow holding. To rule otherwise, non-clients could be required to pay a contingency fee with no written fee agreement in violation of Arizona public policy. *See id.* at 238, ¶ 13. This court, therefore, holds

---

[1] Of note, Lattimer Law raises a different *quantum meruit* issue regarding the allocation of attorney fees between Lattimer Law, Jenkins Law, and Rake Law. This court addresses that separate and distinct *quantum meruit* issue below but mentions it here to prevent confusion.

*quantum meruit* cannot support a claim for attorney fees against persons who never entered an attorney-client relationship with Lattimer Law, Jenkins Law, or Rake Law. *See id.* at 239, ¶ 19.

**IV.** **The superior court did not abuse its discretion in its *quantum meruit* allocation of attorney fees between Lattimer Law, Jenkins Law, and Rake Law.**

**¶22** This court reviews the allocation of attorney fees for an abuse of discretion. *See Charles I. Friedman, P.C. v. Microsoft Corp.*, 213 Ariz. 344, 350, ¶ 17 (App. 2006). "To find an abuse of discretion, there must either be no evidence to support the superior court's conclusion or the reasons given by the court must be clearly untenable, legally incorrect, or amount to a denial of justice." *Id.* (internal quotations omitted).

**¶23** Lattimer Law argues no rational basis supports the superior court's *quantum meruit* allocation between itself, Jenkins Law, and Rake Law. Lattimer Law takes issue with the superior court awarding Rake Law 25% of the attorney fees even though, by the superior court's calculations, Rake Law's work accounted for 19.5% of the total compensable time. Lattimer Law further argues the superior court erred when it excluded 95 hours of travel time for which Lattimer Law billed the estate.

**¶24** Under *quantum meruit*, the superior court looks at several factors to determine reasonable attorney fees, including the work actually performed and the character of the work. *See Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183, 187 (App. 1983). As the superior court recognized, "in determining what a reasonable attorney fee is, one must consider not only the hours worked but also other factors."

**¶25** The record supports the superior court's allocations. Consistent with the fee agreements, the special master recommended "the estate pay a single attorney fee, and that fee be calculated at forty percent (40%) of the estate's recovery." Specifically, the special master recommended the estate pay $144,000 for attorney fees—40% of $360,000. The special master further recommended a *quantum meruit* split between the three law firms. Based on evidence, the special master recommended Lattimer Law and Jenkins Law jointly receive 75% ($108,000) and Rake Law receive 25% ($36,000). Over Lattimer Law's objection, the superior court adopted those recommendations, finding they were not clearly erroneous.

**¶26** Lattimer Law argues the superior court should have awarded Rake Law a lower percentage based on hours worked. The special master, however, found Rake Law added "significant value" in its work to settle

the case and its work was done "expeditiously and done well." The facts before the special master supported those findings. The superior court, therefore, did not abuse its discretion by evaluating the character and quality of the work and awarding more fees to Rake Law under *quantum meruit*. *See China Doll*, 138 Ariz. at 187.

**¶27**         Lattimer Law also argues the superior court abused its discretion by excluding 95 hours of travel time it spent going to and from Phoenix and Washington D.C. Lattimer Law argues the travel time is compensable under *China Doll*. But *China Doll* did not say all travel time was compensable. Rather, *China Doll* said travel time was compensable "*where necessary*." *See id*. at 188 (emphasis added). The superior court did not abuse its discretion when it found Lattimer Law did not prove the 95 hours of travel time were necessary.

**¶28**         Based on the above, the special master and the superior court provided a detailed justification for the fee allocation. The superior court, therefore, did not abuse its discretion.

## ATTORNEY FEES ON APPEAL

**¶29**         Nora requested attorney fees and costs under A.R.S. §§ 12-341.01 and 14-1105.A. Nora is joined in her request for costs on appeal by appellees Tracy, Dana, and Tyra—the mothers of SAB, SNB, and ZLC respectively.[2] The superior court "cautioned that additional litigation may cause the Estate to be further depleted, which is contrary to the Children's best interests." Despite the superior court's cautionary words, Lattimer Law pursued this appeal even after its former clients—Mykel and Ricky—dismissed their own appeal. Further, Lattimer Law's arguments were not supported by the record or the law. Accordingly, this court grants the requests of Nora for reasonable attorney fees and costs and the requests of Tracy, Dana, and Tyra for costs, upon timely compliance with ARCAP 21.

---

[2] Tracy, Dana, and Tyra are parties to the appeal as appellees. Each filed a Motion for Joinder [in the Estate's Answering Brief] and Request for Costs. This court grants the motions for joinder.

**CONCLUSION**

¶30     Based on the above, this court affirms the superior court.



AMY M. WOOD • Clerk of the Court
FILED:     AA